### GLAZER v. WOODWARD et ux.
### No. 2087.

Court of Civil Appeals of Texas. Waco.
March 30, 1939.

Rehearing Denied May 11, 1939.

Tirey & Tirey, of Waco, and Manuel Hoppenstein, of Dallas, for appellant.

Rogers & Scott and P. E. Teeling, all of Waco, for appellees.

ALEXANDER, Justice.

This suit was brought by W. R. Woodward and wife, Bessie Woodward, against Max Glazer and Leo Ringold to recover damages for personal injuries sustained by plaintiffs as a result of a collision between plaintiffs' automobile and a truck driven by one McRae, an alleged agent of defendant. A trial before a jury resulted in judgment in favor of the plaintiffs and against Glazer and Ringold jointly and severally for the sum of $3720. Max Glazer alone has appealed.

The only material question to be determined is whether or not McRae, who was driving the truck that caused the damage, was an agent of Glazer, and this depends on whether or not the business that was being carried on by Ringold at Waco, of which McRae was an employee, was an independent business owned and operated exclusively by Ringold, or whether it was a branch of the business being operated by Max Glazer and others. Max Glazer and others were partners engaged in the business of distributing soft drinks and beer under the assumed name of "Real Juice Company." The main office of the business was at Dallas, but the firm maintained branch offices elsewhere in the state for the distribution of their products. The firm had the state agency for the distribution of Woozies and Black Dallas beer and other drinks. These products were distributed in McLennan county and nearby territory by an agency operated in Waco under the immediate supervision of Leo Ringold. McRae was employed by Ringold and was engaged in the distribution of Real Juice Company products at the time of the collision.

It is appellant's contention that the evidence conclusively shows that McRae was not an agent or employee of appellant and that the trial court should have given an instructed verdict in his favor. In support of his contention, appellant, Max Glazer, testified that neither he nor his firm owned any interest whatever in the business conducted by Ringold at Waco; that Ringold was an independent distributor who bought Real Juice Company products on his own account and sold them as he pleased without any control whatever from Real Juice Company; that the place of business belonged exclusively to Ringold, and that Real Juice Company sold the goods handled by Ringold outright to him, did not pay any of the rent nor employ any of the help nor otherwise exercise any control whatever over the business so carried on by Ringold; that Real Juice Company did not own the truck which caused the damage nor did it employ, control or supervise the driver thereof. Ringold and McRae corroborated the above testimony. On the other hand, Glazer testified by deposition, taken prior to the trial, that his firm—Real Juice Company—was doing business in Waco in May 1936 at the time of the accident; that Real Juice Company products were being sold in Waco at the

place operated by Leo Ringold at 318 South 3rd Street in the city of Waco; that the place of business operated by Ringold in Waco was called the "Waco Real Juice Company," or "Real Juice Company;" that the place of business was listed and advertised in the Waco telephone directory under the name "Real Juice Company;" that all goods sold by Ringold on credit were billed to purchasers on the bill-heads of the Real Juice Company, the effect of which was to show that the account was due to Real Juice Company. In explaining that at some places over the state Real Juice Company distributed its products through its own local agencies and at others through independently owned agencies or distributors, Glazer testified by deposition as follows:

"We have got four of our own set-ups: Waco, Corsicana, Houston—five—Dallas and Tyler. Then all the rest of them are distributors.

"Q. Got five of your own set-ups? · A. Yes.

"Q. That is Waco, Tarrant county—? A. No, Tarrant county is my uncle.

"Q. Waco, Dallas, Houston, Tyler and Corsicana? A. Yes, all the rest of them are distributors. We have got. forty-six distributors.

"Q. How do you handle your own set-up, Mr. Glazer? A. Right through our books in Dallas. All checks are paid out of Dallas; everything except the petty stuff that each branch will pay.

"Q. In other words, you are the boss of those? A. Yes.

"Q. Whatever you say goes with your own set-up? A. Yes, we hire and fire and own the trucks and everything."

Later on, in the same deposition, the witness testified that he was in error in stating that his company owned the Waco agency; that Real Juice Company did not own its own set-up at Waco, but that the Waco distributing agency was owned and controlled exclusively by Ringold. Other evidence showed that the license issued by the county tax collector for the distribution of beer at 318 South 3rd Street in the city of Waco, where Ringold carried on his business, was issued to Max Glazer and his partner, Fritz Glazer. It also showed that Leo Ringold had no license authorizing him to distribute beer. Invoices of goods shipped to Waco showed that the goods were simply invoiced to "Waco" and not to Leo Ringold. The truck driven by McRae at the time of the accident and used by Ringold in the distribution of the products handled by him had the name "Real Juice Company" printed thereon.

■ It is apparent from the foregoing that there is a direct conflict in the evidence as to whether the business in which McRae was an employee belonged to Ringold or to Max Glazer and others who were operating under the firm name of Real Juice Company. Appellant calls attention to the fact that while Max Glazer testified at first that his company owned the business in Waco, he immediately corrected his statement and testified that his company did not own such business, and appellant here insists that we should disregard his original statement as a mere inadvertence. We recognize that witnesses are human and are liable to err and ordinarily when a witness makes a prompt correction of a prior statement, very little weight, if any, should be given to the prior statement. However, without Glazer's original statement admitting ownership of the Waco agency, there were many other circumstances tending to show that the firm actually owned the business. The fact that the firm name was on the place of business, in the telephone directory and on the truck, that goods shipped by the firm to the Waco agency were billed to "Waco" and not to Ringold, that the firm's bill-heads were used in billing customers who bought goods through the Waco agency, and that the beer licenses were issued to members of the firm and not to Ringold, who now claims to have been distributing beer without a permit, are all circumstances tending very strongly to show that the Waco agency actually belonged to the firm. In view of these circumstances, we cannot say as a matter of law whether Max Glazer's original statement that his firm owned the Waco agency was a mere inadvertence or whether his subsequent denial thereof was an after-thought prompted by desire to meet the exigencies of the case. Under our system of jurisprudence, the determination of fact issues is delegated to the jury or other trier of the facts, and where there are conflicts in the testimony of different witnesses or contradictions in the testimony of a particular witness, or where the testimony is vague, or the ultimate fact to be ascertained is not shown by direct testimony but is to be inferred in whole or in part from other circum-

stances in evidence, and the existence or non-existence of the fact sought to be established is not otherwise shown with such certainty that reasonable minds cannot differ as to the effect thereof, a jury question is presented. Wiggins v. Holmes, Tex.Civ.App., 39 S.W.2d 162, par. 2; Stooksberry v. Swan, 85 Tex. 563, 22 S.W. 963; Straka v. Farmers' Mutual Protective Association, Tex.Civ.App., 79 S.W.2d 883, par. 1; Home Benefit Association v. Briggs, Tex.Civ.App., 61 S.W.2d 867; J. M. Radford Grocery Co. v. Matthews, Tex. Civ.App., 78 S.W.2d 989. We think the evidence in this case was sufficient to raise a question of fact for the jury. This assignment is overruled.

Appellant insists that the case should be reversed because of alleged misconduct of the jury. One juror testified that in arriving at the amount that should be allowed for injuries sustained by W. R. Woodward, he and the other jurors took into consideration room rent at the hospital for twelve days at $5 per day and nurse hire for twelve days at $10 per day, whereas, according to the testimony, his total hospital bill was only $89 and the amount paid out for nurse hire amounted to only $18. Said juror further testified that the jury allowed a little more—not exceeding $100—for doctors' bills for Woodward than the evidence showed that he had expended therefor, and that for loss of time the jury allowed $500 per month for the first month and $250 for the two succeeding months. With reference to the damages awarded for the injuries sustained by Mrs. Woodward, the same juror testified that the jury made some allowance for hospital, nurse and doctors' bills, whereas the evidence showed an expenditure of only $29 for hospital bills.

In the first place, we do not think that the verdict of the jury can be successfully attacked by this character of testimony. It will be noted that the juror did not testify to any improper statements or any other overt act of any juror, but he undertook to testify merely as to the mental processes followed by the jurors in arriving at their verdict. In discussing a similar situation, the Texarkana Court of Civil Appeals said: "The courts cannot undertake to probe the minds of jurors or to supervise their process of reasoning during their deliberations. All that the courts are expected to do is to exclude from the jurors the evidence of facts which they should not consider. If a juror of his own accord takes into consideration an improper fact and is thus led to agree to a verdict different from what he would otherwise have agreed to, that is merely following his own method of reasoning, a process over which no court can exercise a supervisory power." Texas & P. Ry. Co. v. Aaron, 19 S.W.2d 930, 935. See, also, 31 Tex.Jur. 42; Lewis v. Halbert, Tex.Civ.App., 67 S.W.2d 430. But if it be conceded that error was committed by the jury in considering items of damage not authorized by the evidence, we think the error was cured by remittitur. With reference to the improper matters considered by the jury in connection with the award in favor of Mrs. Woodward, the record discloses that the jury only allowed her a total recovery of $500, and the trial court required this entire amount to be remitted. With reference to the allowance of extra compensation in favor of W. R. Woodward for nurse hire and hospital and doctors' bills, the court required the plaintiff to remit an additional sum of $280, which was more than sufficient to cover the items improperly included by the jury in this connection. Since the items complained of were capable of definite ascertainment, and the remittitur was more than sufficient to cover same so that the balance of the judgment is free from the taint, the remittitur cured the error, if any. International-Great Northern Ry. Co. v. Cooper, Tex.Com.App., 1 S.W.2d 578. With reference to the compensation allowing for loss of time, there was evidence that as a result of the injury, Woodward was totally disabled for one month and partially disabled for two additional months. There was no direct testimony as to the value of his services during the time lost but the evidence did show that he was in business for himself; that he could not tell what his earnings would be until the end of the year, but that he usually earned approximately $500 per month. This evidence, we think, was sufficient to authorize the jury to estimate the value of the time lost by him. This assignment is overruled.

We have considered all other assignments and find no reversible error.

The judgment of the trial court is affirmed.