## JEFFERSON STANDARD LIFE INS. CO.
### v. YOUNG.
#### No. 1959.

Court of Civil Appeals of Texas. Eastland.

Dec. 15, 1939.

Rehearing Denied Jan. 26, 1940.

Cantey, Hanger, McMahon, McKnight & Johnson, of Fort Worth, and Turner, Seaberry & Springer, of Eastland, for appellant.

Allen D. Dabney, of Eastland, and Callaway & Callaway, of Brownwood, for appellee.

LESLIE, Chief Justice.

This is a suit by Hattye Maurine Young, widow of S. A. Young, deceased, on a policy of life insurance in the face amount of $1500 issued by the Jefferson Standard Life Insurance Company as a joint policy on the lives of Mr. and Mrs. Young.

In her original petition, filed January 12, 1937, the plaintiff alleged the issuance, execution and delivery to herself and husband of the policy sued upon; that her husband, S. A. Young, died an accidental death January 12, 1935, a few days short of one year after the issuance of the policy. She further alleged that at the time of her husband's death all premiums had been fully paid and that the policy was in force and effect.

Recovery was sought for the face amount of the policy and for an additional sum of $1500 provided therein as double indemnity in the case of death resulting from accidental injury. On the double indemnity feature she alleged that her husband fell from the mezzanine to the lobby floor in the Burch Hotel in Breckenridge sustaining a skull fracture and other injuries from which he died the following day.

Among other defenses, the defendant answered that the policy by its terms had lapsed on account of the non payment of the monthly premium falling due November 16, 1934. That said premium was not paid on its due date, nor within the following 30 days grace period.

By supplemental petition plaintiff denied that the policy had lapsed.

In the alternative, the plaintiff pleaded matters of waiver and estoppel, issues on which were not submitted to the jury. In answer to the sole issue submitted, the jury found that said November premium was paid. A judgment was entered there-

on in favor of the plaintiff for the sum of $3,000, (the same embracing the double indemnity coverage), with interest, etc. This judgment is challenged by assignments of error to the effect that the evidence showed "conclusively that the November 16 premium was not paid and that the policy in question had lapsed by its own provisions." And further, that the overwhelming testimony negatived the payment of said premium.

In presenting this appeal the appellant (defendant) has gone upon the theory that "the non-payment of premium is a defensive issue, the burden of proof on which is cast upon the defendant." Without passing on that question we shall assume the proposition to be correct and proceed to consider the questions raised by viewing the testimony and all reasonable intendments arising therefrom in the light most favorable to the appellee.

The policy was dated January 16, 1934. The premiums were payable on the 16th of each month. The evidence, documentary and otherwise, bearing in particular upon the question under consideration, is substantially reflected by the following schedule:

This schedule gives the due date of each premium, the date (if any) of each check, date of deposit by insurance company in Fort Worth bank, date check paid by drawee bank, as well as premium receipts produced and related instruments or exhibits. With the exception of the check for the June premium, which was turned down for insufficient funds but immediately taken up by the Youngs, there is nothing unusual entering into the history of this insurance transaction from the viewpoint of either litigant during the months of January, February, March, April, May, June, July and August, 1934. When the policy was taken out in January the initial premium was paid. Premium checks for the above months were identified by plaintiff and applied to the premiums for the respective months. The check for each said month's premium was of a date within the relevant 30 days grace period of such month, but, as will be seen, each such payment was after the due date of the premium paid. The schedule so shows.

The premium checks, plaintiff's exhibits C to I, correspond to the premium receipts introduced as defendant's exhibits 1 to 7. Special attention will now be directed to the

| Premium Date | Date of Checks | Date of Deposit Fort Worth | Date Payment Breckenridge | Premium Receipts Produced |
|---|---|---|---|---|
| Jan. 16 | Initial premium—no check, offered, but payment testified to by Charles Windell | | | |
| Feb. 16 | February 20— (Plaintiff's Exhibit C) | Feb. 21 | Feb. 23 | Defendant's Exhibit 7 |
| Mar. 16 | March 29— (Plaintiff's Exhibit D) | Mar. 30 | Apr. 2 | Defendant's Exhibit 6 |
| Apr. 16 | April ——— (Plaintiff's Exhibit E) | Apr. 25 | Apr. 26 | Defendant's Exhibit 5 |
| May 16 | May ——— (Plaintiff's Exhibit F) | May 22 | May 26 | Defendant's Exhibit 4 |
| Jun 16 | June 21— (Plaintiff's Exhibit G) | Jun. 23 | Check not paid but taken up in cash, Jun. 25 | Defendant's Exhibit 3 |
| Jul. 16 | July 17— (Plaintiff's Exhibit H) | Jul. 18 | Jul. 19 | Defendant's Exhibit 2 |
| Aug. 16 | August 21— (Plaintiff's Exhibit I) | Aug. 22 | Aug. 23 | Defendant's Exhibit 1 |
| Sept. 16 | No September check—next check not dated (Plaintiff's Exhibit J) | Oct. 10 | Oct. 11 | Plaintiff's Exhibit L |
| Oct. 16 | November 27th— (Plaintiff's Exhibit K) | Nov. 28 | Nov. 30 | Plaintiff's Exhibit M |

(It was in connection with this check that defendant offered Exhibits 8 and 9, being applications for reinstatement signed by S. A. Young and Mrs. Young, applications being dated November 28th.)

| Premium Date | Date of Checks | Date of Deposit Fort Worth | Date Payment Breckenridge | Premium Receipts Produced |
|---|---|---|---|---|
| Nov. 16 | None | None | None | None |
| Dec. 16 | None | None | None | None |

circumstances surrounding the premiums falling due in September, October and November, 1934.

The plaintiff, after diligent search for a check, "or September check", paying the premium falling due on the 16th day of September, was unable to find any such check dated or issued within the 30 day grace period of that month except the October check (undated) presently to be discussed. This undated check identified and given by Mrs. Young for a premium, was deposited by the defendant in the Fort Worth bank October 10, 1934 (see schedule) and paid by the bank October 11, 1934. This check was introduced as plaintiff's exhibit J. A premium receipt (plaintiff's exhibit L) corresponds to this October check. The delivery and payment of this October check fell within the grace period following the due date of the September premium and was applied to the payment of the same.

While on the witness stand Mrs. Young testified that the checks identified by her were all she had found among the papers and canceled checks where she or her husband kept, or would most likely have kept them, and that they were given by herself in payment of premiums on the policy. In response to a question by her attorney "Have you—or did you or not write a separate check or check for the September premium" she testified: "I am not positive. Mr. Young made a trip to Fort Worth often and he could have made payment then." On objection the court struck out all of this answer except the words "I am not positive."

Our view that the undated October check was by the interested parties intended to be and was properly applied to the premium due September 16, results from a careful study of the whole record. The plaintiff admitted she could locate no September check pertaining to the payment of that month's premium; but if by check (other than the October check) or other competent testimony, payment of the September premium could be established, that would leave the undated October check (cashed October 11th) to be applied, as apparently contended for by plaintiff, to the premium falling due October 16 and the plaintiff would then be in a position logically to seek or insist upon the application of the November 27 check to the payment of the November 16 premium and such an application as that, if correct, would place the policy in

good standing until December 16 and during the 30 day grace period thereafter which would extend the life of the policy to January 16, 1935, a date beyond the death of Young, which occurred January 12, 1935.

That such insistence is without foundation appears at once when other phases of indisputable testimony are given due consideration. For instance, when the check of November 27, written and identified by Mrs. Young, was transmitted to the company, she and her husband each signed and transmitted with that November check an individual application to have the policy in suit reinstated because they had defaulted in the premium payment due October 16. These applications were introduced in evidence (exhibits 8 and 9) and each of them contains the following preamble: "Whereas, policy above numbered lapsed by reason of non payment of premium or note due on October 16, 1934, I hereby make application for reinstatement of said policy and warrant the answers to the questions below to be true."

These applications contained other significant declarations by the Youngs. They were presented in good faith to the company and a reinstatement of the policy obtained thereby. Obviously the undated October check was applied as intended by the interested parties to the September premium, for the payment of which the plaintiff was admittedly unable to produce a check or other competent evidence, and the October premium was paid as evidenced by said applications. The declarations in these applications were made at a time (November 28, 1934) when the Youngs were evidently in good health and at a considerable period of time before S. A. Young sustained the unfortunate accident resulting in his death. No death claim had accrued and no suit was pending or contemplated. If the November 28 check had been applied in any other way than to the payment of the October premium, it would have been contrary to the express direction given by the Youngs in said instruments.

■ Except as hereinafter noted, this record contains nothing indicating any attempt by plaintiff to show any other payment of premiums to the defendant after the date of the November 28 check. That check, by the direction of the Youngs, having been applied to the October premium, the November premium remained unpaid, unless the evidence of its payment is found elsewhere. The record before us

contains no such evidence. When the Youngs presented the November check and the accompanying applications to the defendant seeking a reinstatement of the policy on account of the October default, no one could know better than they the status of their premium payment record. No receipt for the premium falling due November 16 was produced.

While the Youngs could have paid the October premium in advance of the due date, nevertheless their uniform practice during the life of the policy was to pay after such date, as disclosed by the schedule and testimony. This, of course, is but a circumstance, not controlling in itself, but it throws light on a material issue and corroborates other testimony, which independently and of itself compels the ultimate conclusions entertained by the court. Further, there is no pleading of fraud, accident or mistake in reference to the applications, for reinstatement. We find nothing in the testimony to affect or in any way nullify the conclusive effect of the recitals and declarations found in the applications for reinstatement of the policy for default in the payment of the October premium. Bankers' Life & Loan Ass'n v. Chase, Tex.Civ.App., 113 S.W.2d 947. Taking the testimony as a whole, it is not only barren of competent evidence to show the payment of the November premium, but to the contrary the testimony establishes its non payment.

Further, and in response to a letter written to the company in behalf of the Youngs by the company's agent, Odell Bailey, that company on December 26, 1934 (prior to the accident and death) wrote a letter giving the status of the Youngs' premium payments on this policy. This letter showed premiums paid from February to October, substantially as indicated in the schedule and the company wrote in connection with this report, the following: "You will notice that Mr. Young got behind with the September premium as he failed to forward us his check for that month until October. He sent the October premium in November but it had to be reinstated as we had sent the receipts back. Hence, the reason the October premium was not recorded until December 13 * * *."

The agent, Odell Bailey, wrote in ink at the bottom of the above letter this notation: "If this is correct, it makes the November and December premiums due. Odell."

This letter with that notation was transmitted to the Youngs. Not finding the Youngs at home, Bailey pushed this letter under the door of their residence and they received and read it about the 27th or 28th of December, 1934. Bearing in mind the October premium had been paid and the policy reinstated as per the November check and applications, it is obvious the letter just quoted and the notation by Odell Bailey carried to the insured about December 28, 1934 definite information of the new status of premium payments and especially as it related to the months of November and December. This was but a few days before the insured's death.

The circumstances surrounding the death of Mr. Young and the plaintiff's conduct at the time are significant. Plaintiff was at Ranger when the accident occurred on January 11, 1935. Being notified she went at once to the scene of the accident and attended her husband until his death the next day. He never recovered consciousness. At the time and under such circumstances the plaintiff was importuned by friends to ascertain the status of her husband's insurance. This she did. The defendant's agent, Odell Bailey, was called to Breckenridge for consultation. It resulted that a check dated January 10, 1935, for $19.98 carrying the name of S. A. Young as the signature thereto (so signed by Mrs. Young) was received about January 14 or 15 by the Fort Worth office of the defendant. The amount of this check was exactly three times the usual monthly premium of $6.66 and presumably was intended for premiums falling due November, December and January. Said check was accompanied by two blank applications for reinstatement of the policy. One application was signed by Mrs. Young in person and the other carried the name of S. A. Young, but it was not shown who signed his name thereto. These instruments were executed the evening of the 11th of January while Mr. Young was unconscious, from which he never recovered. Plaintiff testifies she instructed no one to sign her husband's name to the application and that she did not know who signed it and that she signed certain of the instruments at the request of Mr. Bailey. The agent, Odell Bailey, forwarded these instruments to the company. The defendant did not cash the check. The check reached the Fort Worth office January 15 and the home office January 21. The instruments were

1044

immediately returned to the local agent with instructions to return them to Mrs. Young.

Concerning these instruments and omitting formal parts, the defendant's local agent, Odell Bailey, wrote the Fort Worth office on January 14, 1935, the following:

"Enclosed is the papers and check on lapsed policy 500260—Young. These papers and check were delivered to me 8 p. m. January 11, 1935 and by 8:30 I found out Mr. Samuel Agustus Young had been in an accident and was at the point of death, the accident happened about 3 p. m. I then informed Mrs. Young, his wife, that it would be impossible to reinstate this policy and explained why and she agreed with me.

"Very truly yours,

"Odell Bailey."

As before observed, Mrs. Young testified she looked after the premium payments, and paid by check, that they were drawn on the First National Bank of Breckenridge except the initial payment which was by check on the Texas State Bank of Breckenridge. That the checks produced were all that she had and that a premium receipt was received for each premium paid by her. Upon the trial the records of the banks where the deceased Young had been doing business at the times material to this litigation were produced. The permanent records of the insurance company at the Fort Worth branch office, as well as the home office were introduced in evidence. The above records and several checks in payment of premiums, premium receipts and applications for reinstatement disclose remarkable harmony and point with certainty to the non payment of the November premium. If there be anything in the testimony partaking of a contrary nature, such suggestion or statement, if any, does no more than create a mere surmise or suspicion to that effect and therefore does not in legal contemplation amount to any evidence. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

In support of our conclusions on the question above discussed and deemed controlling we cite Bankers' Life & Loan Ass'n v. Chase, 113 S.W.2d 947, writ dismissed; Campbell v. Atlas Life Ins. Co., Tex.Civ.App., 113 S.W.2d 619; National Life & Accident Ins. Co. v. Casillas, Tex. Civ.App., 63 S.W.2d 396; Texas Life Ins. Co. v. Mansel, Tex.Civ.App., 105 S.W.2d 899; American Nat. Ins. Co. v. Meneses, Tex.Civ.App., 42 S.W.2d 1047; National Life & Accident Ins. Co. v. Robledo, Tex. Civ.App., 93 S.W.2d 1198; Excelsior Mut. Life Ins. Co. v. Davis, Tex.Civ.App., 77 S.W.2d 287.

These authorities merely deal with cases in which analogous fact situations were considered. They illustrate the proper interpretation and effect to be given such testimony and, we think, sustain this court's conclusions.

If we are correct in the above holding the questions involving recovery by reason of the double indemnity feature of the policy becomes immaterial.

We have carefully examined the record in view of the assignments asserting error in the action of the trial court in refusing to submit issues of waiver and estoppel. We do not believe there was any error in the trial court's ruling in that respect.

This case has been fully developed. Much of the testimony is documentary. For the reasons assigned the judgment of the trial court is reversed and judgment here rendered for the appellant.