DALLAS RAILWAY & TERMINAL COMPANY V.
LEWIS A. JARVIS

No. A-4597. Decided July 7, 1954.
(270 S.W. 2d Series 205)

*Burford, Ryburn, Hincks & Ford, Howard Jensen and Joseph M. Stuhl,* all of Dallas, for petitioner.

The Court of Civil Appeals erred in holding that defendant's driver was negligent in stopping his bus so that the metal safety zone buttons were beneath the rear exit door, of the bus, and that such negligence was the proximate cause of the accident. Houston Transit Co. v. McQuade, 223 S.W. 2d 64; Texas & N. M. & Okla. Coaches v. Williams, 191 S.W. 2d 66; Houston Transit Co. v. Zimmerman, 200 S.W. 2d 848.

*Chaney, Davenport & Harless and Fred S. Harless,* all of Dallas, for respondent.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Respondent, Lewis A. Jarvis, is the husband of Hannah Jarvis, and by his suit against Dallas Railway & Terminal Company, petitioner, sought damages for injuries to his wife. The trial judge overruled a motion by the defendant to disregard answers of the jury, favorable to the plaintiff, to certain special issues and render judgment for defendant, and rendered judgment on the verdict for the plaintiff. The Court of Civil Appeals affirmed.

Plaintiff's wife was injured when she fell while in the process of alighting from defendant's bus. In her petition she alleged the manner of her injury as follows: "that when the bus stopped she pushed open the double doors and noticed that the bus had stopped in such a position that the safety buttons, placed in the street for a zone for boarding and leaving such bus, were directly beneath the door and had she stepped down immediately she would have stepped on said buttons, and at such instance (sic) the bus started up in forward motion and she was thrown out of the door and on the pavement with such force and violence that her foot struck said buttons which resulted in serious personal injuries to her left ankle as will be set out herein below."

She charged the defendant with the following negligent acts and omissions, each of which was alleged to be a proximate cause of her injury: "1. In starting the bus before Hannah Jarvis was clear of the said bus. 2. In failing to keep a proper lookout for the safety of Hannah Jarvis. 3. In bringing said bus to a stop in such a position whereby the safety zone buttons were directly beneath the door where Hannah Jarvis would leave the bus."

The jury found the defendant failed to keep a proper lookout for the safety of Hannah Jarvis which was a proximate cause of the accident, and that the defendant failed to use a high degree of care in stopping the bus in such a position that the safety buttons were directly beneath the door where Hannah Jarvis would leave the bus which was a proximate cause of the accident. It was these findings that the defendant sought to have disregarded on the ground that they had no support in the evidence. If they should be disregarded the judgment for plaintiff cannot stand because the jury found in response to the only other negligence issue submitted that the driver of the bus did not start it before Hannah Jarvis was clear of it. The questions raised by this motion and the points of error predicated thereon require an examination of the evidence.

Hannah Jarvis was the only witness who testified to the manner in which the accident occurred. Her testimony with respect thereto, although not entirely clear, is at least brief and is here reproduced in full:

*On direct examination:*

"Q. Tell the Jury how it happened.

"A. Well, I pulled the cord to get off and I was sitting in the back and I stepped down on the step to get off and he opened the door—I went to step out and I seed—you know—the safety buttons that were there, and I hesitated to keep from stepping on them and he pulled up and I fell out the bus. And when I seed I was falling, I went to catch my feet and I turned on my ankle, and when I turned my ankle, well, I fell. I tried to get up. I couldn't do no walking much, and I hopped to the sidewalk and stood up and this white woman came up and, you know, she helped me to her car.

"Q. When you first started to get off the bus, did you push on the door?

"A. Yes, sir, I pushed on the door to get off.

"Q. What was it you said was immediately, directly underneath the car?

"A. It was those buttions, the safety zone, you know, these buttons where the bus stops to drive up in, and he stopped right on one of them and he opened the door—he released the door, and I seed I couldn't step out on that button and I hesitated and he thought I was going to get off, I guess, and he pulled up, and when I fell, I tried to catch up on my feet, and I fell to the ground when the bus was moving up.

"Q. Did this bus stop?

"A. No, he didn't stop.

"Q. Well, did you step on one of those buttons when you did get down?

"A. I caught on my feet—I was trying to catch on my feet, and when I caught my feet, he was moving along, I guess, when I fell and I tripped my feet on one of those pills or buttons.

"Q. Was that bus moving when you left the door?

"A. As he pulled up, because if he hadn't pulled up, I could have stood, but after he pulled, I fell. After he moved up, that gave me a throw and I fell and I seed I was going to fall and I tried to catch on my feet and turned my ankle."

*On cross-examination.*

"Q. All right. Now, from the time that you say you pushed on the door until the time that you fell, did the door ever close? Was it open all the time?

"A. There is something else that day down there I told them, I don't remember whether the door was open or what, I just remember when I pushed on the door, I saw that pillow (evidently a reference to the safety button) and didn't remember stepping on it, and when the car pulled up, I just fell out and I hesitated—

* * *

"Q. When you got up and went to the door, the bus was standing still, wasn't it?

"A. Uh-huh.

"Q. When you got to the door, the door was closed?

"A. Yes.

"Q. Which hand did you use, if you remember, to open it?

"A. Well, I would have used my right hand. I can open the door with something in my hand—just push it open.

"Q. Just push it open—when you shoved it open, then, did it stay open, then, until you fell out of the car?

"A. When I went to push the door out I seed I couldn't get out and I let it come back, you know what I mean, I didn't go out that time, because I didn't step, but when the bus pulled up, I fell out.

"Q. I don't know whether I understand you or not. Is it your testimony that you opened the door twice or that you opened it once?

"A. Well, I pushed—you know what I mean, I went to get off.

"Q. Did you open it once or twice?

"A. It was once. You know what I mean, when I looked and

seed I couldn't get out the door, you know, it come to but it didn't close, because if it had, I wouldn't have fell out.

*  *  *

"Q. You don't know whether you fell through an open door or a closed door?

"A. It had to be open for me to fall.

"Q. And it is your testimony, is it, that when you fell through this open door or just before and while the door was open, the bus moved forward, is that right?

"A. Yes, sir.

*  *  *

"Q. The bus wouldn't drive up on the buttons—

"A. He didn't drive on the buttons, but he didn't go far enough in the safety zone to drive up far enough. He pulled up and stopped on the safety zone.

"Q. He didn't pull up on the buttons? The button—

"A. It was there by the side of the door."

*By deposition.*

"Q. I wish you would just tell me in your own words just what happened at the time you say you got hurt. Tell me what happend.

"A. Do you mean when I went to get off the bus?

"Q. Whatever it was when you got hurt, just describe it to me.

"A. September 5, it was on Wednesday, I went to get off at Field & Commerce, and I pulled the cord to get off and he stopped right on two safety zone,—I call them pillars, I don't know what they are, they are some kind of iron, you know, in the street. I seen at the time he stopped I couldn't step on them, and I was a little slow in getting off, I hesitated, and he pulled up and throwed me out and I went to catch and when I hit the ground my feet struck that pillar.

"Q. That pillar you are talking about, is that same thing that I call a safety zone button?

"A. Yes, sir."

The only theory of recovery supported by the foregoing testimony is that as plaintiff's wife started to leave the bus the driver negligently moved it causing her to fall, and that theory was rejected by the jury.

There is no evidence of probative force that the fall was poximately caused by the stopping of the bus in such a position

that the safety zone buttons were directly beneath the door and there is no evidence of probative force that plaintiff's wife's fall was caused by her stepping on one of such buttons. Jury verdicts cannot be made the basis of a judgment when they rest on nothing more than mere surmise or suspicion. Joske v. Irvine, 91 Texas 574, 44 S.W. 1059, 1063; Jefferson Standard Life Ins. Co. v. Young, Texas Civ. App., 135 S.W. 2d 1040, 1044, writ refused.

Neither will the finding of failure to keep a proper lookout for the safety of plaintiff's wife support the judgment. That finding can be related only to the conduct of the bus driver in stopping the bus with the door directly over the safety zone buttons which, as we have held under the evidence, had nothing to do with the fall, or in moving the bus while plaintiff's wife was trying to alight therefrom which the jury has found did not occur, or in not watching plaintiff's wife while she was leaving the bus which could not have resulted in preventing her fall.

The judgments of the trial court and Court of Civil Appeals are reversed and judgment is here rendered that plaintiff take nothing.

Opinion delivered July 7, 1954.