**SUMNERS ROAD BORING, INC., Appellant,**

v.

**J. O. THOMPSON, Appellee.**

No. 113.

Court of Civil Appeals of Texas.

Corpus Christi.

July 29, 1965.

Rehearing Denied Sept. 16, 1965.

Bell, Gwin & Furse, Lawrence P. Gwin, Bay City, for appellant.

W. Jack Salyer, Bay City, Brown, Kronzer, Abraham, Watkins & Steely, W. James Kronzer, Houston, for appellee.

GREEN, Chief Justice.

Appellee J. O. Thompson, plaintiff below, following a jury verdict recovered judgment for damages in the sum of $53,062.00 against appellant Sumners Road Boring, Inc., for personal injuries received in a rear-end automobile collision. From an order overruling appellant's amended motion for a new trial, it has perfected its appeal to this court.

In answer to the only special issues submitted to the jury concerning responsibility for the accident, the jury found (1) that at the time of the occurrence made the basis of the suit, Mahler, appellant's employee, failed to exercise such control of the truck he was operating as would have been maintained by a reasonable and prudent person under the same or similar circumstances, (2) which failure was a proximate cause of the said occurrence, and (3) that the accident was not an unavoidable accident.

All other special issues related to plaintiff's damages. The court's judgment was based on the above answers of the jury, together with their responses to the damage issues.

Defendant timely in writing leveled the following objections, which were overruled by the court, to Special Issue No. 1, the "proper control" issue:

"(a) No evidence; (b) insufficient evidence; (c) against the overwhelming weight and preponderance of the evidence; (d) No pleadings; (e) *That the submission of the issue of failure to exercise control is a single issue constitutes a general charge.*"

Appellant's first point of error reads:

"It was error for the Court to submit the primary negligence issues in a single issue of proper control over Appellant's objection that the same constituted a general charge."

Appellee's counterpoint to the above is as follows:

"The Trial Court properly entered a judgment based upon the findings of the jury in response to the 'proper control' issues because they were not too general or global, because there were

no proper objections thereto, and because the undisputed evidence in the case established Appellant's responsibility."

We shall first consider the last part of appellee's crosspoint. As we view the record, the evidence, when considered most favorably to appellant, shows that Mahler, appellant's driver, was guilty of negligence as a matter of law in failing to properly apply his brakes, and that such negligence was a proximate cause of the accident. Regardless of whether the trial court erred in submitting the proper control issue, since there was no evidence of any contributory negligence by appellee, appellant, the admitted employer of Mahler acting at the time within the scope of his employment, was under the testimony responsible for the accident.

At the time of the collision, which occurred about 10:30 a. m. on a clear, dry day January 8, 1963, appellee was sitting in the driver's seat of his car, stopped at a street intersection in Bay City, Texas, waiting for the red traffic light facing him to turn to green so that he could proceed. Mahler testified that as he was approaching from behind appellee's car, driving about 35 miles per hour, he saw the car while still approximately fifty yards away, and realized it was stopped for a red light. On direct examination, as a witness for appellant, he stated:

"Well, I proceeded into town. I wasn't in any particular hurry, because I would just have to get back and go back to work, and I came up and this car happened to be setting at a red light, at a dead halt, and I came behind him slowing down and all of a sudden my foot was on the brake, and slowing down, and all of a sudden there was nothing and I rolled up and bumped him. I got out and I told him I would like to go over to the filling station so we wouldn't block traffic, and we drove over to the filling station and parked. He in front and I parked

up against the wall and then someone—"

On cross examination, he testified:

"Q. Are you now saying that your brakes went out, is that what you are saying, when you say I had nothing—

A. That is not at all what I told you.

Q. Are you now saying that your brakes went out?

A. No, I am not saying my brakes went out. They failed me, in other words, you can have many different ways your brakes failing. I had my foot on the brake now, as far as saying anything that my foot slipped off the brakes, or slipped to the side, and missed, any knowledge I had my foot was on the brake and pressing on it, and it didn't—wasn't going to stop. It was at a rolling speed, it wasn't going to stop before I was going to bump him.

Q. So you swerved when you saw you weren't going to stop?

A. I didn't have any time to swerve. I just cut the steering wheel and barely moved over.

Q. And your foot, while your foot went to the floor, it may have gone to the floor, because it came off the brake?

A. Something like that, could've happened.

Q. Right and probably did.

A. I am not saying it probably did, it could have.

Q. But any rate after the accident was over, you had brakes?

A. I had—they were checked, and they were just barely brakes.

Q. But you had brakes that would stop and did stop when you pulled up into the service station?

A. Yes." * * *

"Q. In all probability, your foot did slip off the brakes?

A. It might have."

Mahler stated that he had had no trouble with the brakes of the pick-up in driving to town previous to the accident, or in driving and stopping it after the collision. He knew of nothing being wrong with the brakes. Appellant's witness Joe Sumner, an owner of appellant company, and Mahler's boss, was a welder and machinist, and frequently did repair work on the company cars. He testified that he checked the brakes on the pick-up after the accident and could not find anything wrong with them. A couple of spoons of hydraulic fluid was all that was required to fill the brake cylinder. A peace officer, called to the scene of the accident, who did not qualify as a mechanic, used by appellant as a witness, was permitted without objection to testify that when he checked the brakes,

"The brakes were classified as defective brakes, by that I mean anytime you don't—when you might hit a brake, and it doesn't catch, like it first should why that is my theory that is a defective brake, you pump them up and it'll take a good long while, by that time somethings already occurred."

On cross-examination, he testified to the effect that Mahler should have been able to stop the truck prior to striking the car if after discovering the stopped car he kept pumping the brake with his foot.

Thus all of the testimony concerning the brakes disclosed that they were working before and after the accident, and that no repairs were necessary. There can be no inference drawn that they were defective other than that they may have required "pumping". Mahler was unwilling to state that any condition of his brakes, as distinguished from his foot slipping off, caused the occurrence. There was no testimony, above the grade of a scintilla,

that any condition of the brake caused or contributed to cause the accident. Mahler's testimony, giving it its most extended inferential value, does not constitute more than an equal inference that his foot slipped off the brake. Dallas Railway & Terminal Co. v. Jarvis, 153 Tex. 384, 270 S.W.2d 205.

In Hoey v. Solt, Tex.Civ.App., 236 S.W. 2d 244, a rear end collision suit, the appellate court, concluding that defendant was guilty of negligence as a matter of law, reversed the trial court's judgment for defendant on a jury verdict, and rendered for plaintiff, and said:

"It can not be gainsaid that one who fails to stop his automobile in response to a traffic signal, but propels the same into the rear end of an automobile which has stopped in obedience to the signal, is guilty of negligence proximately causing injury or damage unless such conduct is excused by some extenuating circumstance or condition."

This court has recently had occasion to write rather extensively in a rear end collision case in Meinen v. Mercer, Tex. Civ.App., 390 S.W.2d 36, writ ref. n. r. e. The judgment of the trial court for the defendant was reversed, and judgment was rendered for the plaintiff and damages assessed by the jury. Many authorities controlling the issues here involved are cited and discussed in Justice Sharpe's opinion. Without quotation or further discussion of authorities, we refer to what this court said in Meinen v. Mercer, and to Justice Norvell's opinion (Tex.Civ.App.) in Hoey v. Solt, supra, and hold that there are no extenuating circumstances or conditions shown to excuse Mahler's propelling his truck into the rear end of appellee's car, properly stopped in response to a traffic signal, and that Mahler was guilty of negligence as a matter of law in failing to make proper application of his brakes and that such negligence was a proximate cause of the collision.

■ Otherwise, and if the evidence were sufficient to require a jury issue of negligence and proximate cause of Mahler on the occasion in question, we are of the opinion that the trial court erred in submitting the case to the jury on the liability issue of proper control over appellant's objection, and would reverse and remand the cause. Kainer v. Walker, Tex.Sup.Ct., 377 S.W.2d 613, and Barclay v. C. C. Pitts Sand and Gravel Co., Tex.Sup.Ct., 387 S.W.2d 644. In view of the statement of the Supreme Court on rehearing in Kainer v. Walker, the objection to the special issue made by appellant in the trial court that the submission of the issue of failure of control * * * constitutes a general charge was sufficient to apprise the court of the nature of appellant's objection, and the court committed error in overruling same.

However, in view of our holding that negligence of appellant's driver, and proximate cause, was established as a matter of law, such error becomes immaterial, and is not reversible; and we shall proceed to determine the remaining points raised on this appeal.

Appellant's Second and Third Points allege error in the trial court's sustaining appellee's motion to preclude appellant from offering testimony of jurors on alleged misconduct, and in refusing to hear such testimony on the hearing of the motion for new trial. In this respect, appellant's motion for a new trial alleged that the court erred in entering judgment on the verdict for the reason that (1) the jury by mistake incorrectly computed the answer which they intended to make to Special Issue No. 5, (the damage issue); (2) the jury did not take into consideration in arriving at the amount of damages that all future damages were to be based upon their present value in cash; (3) the jury did not take into consideration the pre-existing disability from which the plaintiff was suffering at the time of the collision made the basis of the suit; (4) the jury did not take into consideration in answering Special Issue No. 6 (the medical expense issue) that all

future damages were to be based upon their present value in cash; (5) appellant further alleged that each of the assignments relating to the matters occurring during the deliberations of the jury is supported by the affidavit of the foreman, Charles I. Ottis, attached to and made a part of the motion.

The affidavit of Ottis, so far as here material, contained the following statements:

"The elements in issue #5 were determined as follows:

(1) Loss of income for the time before trial was figured at $42.00 a week for 60 weeks, or $2520.00.

(2) Pain and suffering for this same period at $5.00 a day for 60 weeks, or $2,100.00.

(3) Mental anguish for this same period at $5.00 a day, or $2,100.00.

(4) Future loss because of the Plaintiff's diminished capacity to work was figured at $42.00 a week for the Plaintiff's life expectance of 18 years of $39,312.00.

(5) Future pain and suffering was figured at $5.00 a day for 6 months or 183 days or $915.00.

(6) Future mental anguish was figured at $5.00 for 6 months or 183 days or $915.00.

This sum totaled $47,862.00 which was our answer to Special Issue No. 5. The method of computing each of the elements as outlined above was discussed and agreed upon by all of the members of the Jury. $42.00 a week was used because of the testimony that this was the wage for a farm laborer.

In answer to the last issue or Special Issue No. 6, as to future medical expenses, we allowed $5.00 each for 2 physical therapy treatments a week for 10 years or 520 weeks; our answer to this issue was $5,200.00 * * *."

Appellee's "Motion to Preclude Defendant from offering Testimony from the Jurors" stated in effect that appellant had not alleged any jury misconduct; that the allegations in appellee's motion involved only questions of the mental processes of the jurors, and that:

"Defendant has not alleged that it is entitled to a new trial because of jury's deliberations, but simply alleges that the Court committed error in entering judgment because of the deliberations of the jury, and nothing pertaining to the jury's deliberations was called to the Court's attention at the time judgment was entered."

The court sustained appellee's motion to preclude, and refused to permit appellant to present testimony of jurors tendered by appellant in support of the motion for new trial, but permitted a record to be made of offered evidence of jurors Ottis and Harrison for the purpose of perfecting a bill of exception. This testimony supported, in the main, the affidavit of juror Ottis.

It will be noted that appellant's complaint in his motion for new trial was that the Court erred *in entering judgment on the verdict*. The verdict was regular on its face, and supported by competent evidence. No motion for judgment notwithstanding the verdict, or to disregard any particular finding of the jury, was filed by appellant prior to the entry of the judgment. Thus, the trial court had no alternative but to enter the judgment, and any subsequent claims of jury misconduct could not affect the duty of the court to have entered judgment in the first place.

■ In a jury case, proper assignments of error in a motion for new trial are a necessary condition to the right of complaint on appeal. Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887; Collins v. Smith, 142 Tex. 36, 175 S.W.2d 407.

In the case of McDonald v. New York Central Mutual Fire Ins. Co., Tex.Sup.Ct., 380 S.W.2d 545, it was expressly held that an assignment of error based on a similar ground in appellant's motion for new trial complaining with respect to the *entry of judgment* does not reach a complaint which would require granting a new trial as distinguished from the entry of the judgment itself. In this connection the court said:

"However, the insure*d* does not raise in the Court of Civil Appeals the point of 'insufficient evidence' to support the jury findings or the point that the findings are against 'the great weight and preponderance' of the credible evidence. Its points are premised on the proposition that the Court erred in entering judgment on the jury's verdict and correspond to the grounds appearing in its amended motion for new trial. The points are in the following form:

'The Court erred in overruling defendant's motions for instructed verdict and judgment n. o. v. and in entering judgment on the jury's verdict because there was insufficient evidence that the damage to plaintiff's beach house was covered by the policy sued upon in that there was insufficient evidence that the damage was caused by the wind and insufficient evidence that it was not caused by water or the concurring action of wind with rising water and wind driven water.'

The points do not seek relief from the jury findings on the ground that they are not supported by sufficient evidence or that they are against the great weight of the evidence, but relate only to the type of judgment that the Court entered. They are not applicable to the granting of a new trial after the entry of a judgment."

■ Upon the authority of the above quoted decision of the Supreme Court, we hold that the assignments contained in appellant's motion for a new trial to the effect that the court erred in entering judgment on the verdict because of alleged

jury misconduct were not applicable to the granting of a new trial after the entry of judgment.

■ Furthermore, the allegations of alleged jury misconduct, together with the statements contained in the attached affidavit, are inadequate to show misconduct of the jury requiring reversal under Rule 327, Texas Rules of Civil Procedure. Where a motion for new trial alleges and the attached affidavit of a juror shows, material overt acts of jury misconduct, the trial court is required to hear testimony thereof. Roy Jones Lumber Co. v. Murphy, 139 Tex. 478, 163 S.W.2d 644; Allan v. Materials Transportation Co., Tex.Civ.App., 372 S.W.2d 744. The requirement that the allegations be specific as to the type of alleged jury misconduct is for the "manifest purpose * * * to afford assurance to the court that the complainant would probably be able to support his allegations by proof." Robertson v. Humble Oil & Refining Co., Tex.Civ.App., 116 S.W.2d 820, writ dis., cited with approval by the Supreme Court in the Murphy case, supra.

■ The amount by which a jury discounts the present value of their award is peculiarly within their province, and they are not bound by life expectancy tables. Texas Consolidated Transportation Co. v. Eubanks, Tex.Civ.App., 340 S.W.2d 830 (writ ref. n.r. e.); Texas & New Orleans R. Co. v. Flowers, Tex.Civ.App., 336 S.W. 2d 907.

■ Furthermore, the type of evidence offered by appellant as demonstrated by the affidavit attached to its motion, and as tendered in its bill of exceptions, does not constitute overt acts of material misconduct, but at best shows possible misconstructions of the charge of the court, or the jurors' own interpretation of evidence before them. This does not show reversible error on the trial court's part in refusing to hear such evidence. Compton v. Henrie, Tex.Sup.Ct., 364 S.W.2d 179; Glazer v. Woodward, Tex.Civ.App., 127 S.W.2d 938.

Appellant's Second and Third Points are overruled.

■ Appellant's Fourth Point, to the effect that the court erred in permitting appellee to testify, over objection, that he paid his entire income from his 1963 crop to the Commodity Credit Corporation at El Campo, and was still $3500.00 in debt, is overruled. Even if the evidence were subject to the objection made and overruled, and we feel that it was not, reversible error was not shown, since practically the identical testimony had already been given by appellee without objection. New Hampshire Fire Insurance Co. v. Plainsman Elevators, Inc., Tex.Civ.App., 371 S.W.2d 68, writ ref. n. r. e.; City of Gladewater v. Dillard, Tex.Civ.App., 312 S.W.2d 530.

■ Appellant's Fifth and Sixth Points allege error in the court's refusal to allow appellant to cross examine appellee with reference to a fight he had in 1951, thirteen years prior to the trial, in which he had been hit on the head with a hoe, and required stitches to remedy the cut. There was nothing in the offered testimony to indicate any continuing effects of this 13 year old fracas. No reversible error is shown by these points.

■ The court did not err in sustaining appellee's objection to proffered testimony of the conviction of appellee for aggravated assault in July, 1945, as claimed by appellant in its seventh point. Too remote for one reason. United Benefit Fire Insurance Co. v. Stock, Tex.Civ.App., 344 S.W.2d 941; Transport Insurance Co. v. Cossaboon, Tex. Civ.App., 291 S.W.2d 746, writ ref. n. r. e.

■ Appellant's Eighth Point claims error in the instruction of the trial court to the jury, in connection with the damage issue, that it might consider loss of income, if any, sustained by appellee from the date of the injuries to the date of trial over appellant's objection of no evidence of any such loss.

Appellee was a farmer, engaged principally in growing cotton and rice on his own land. Due to the inherent nature of such occupation, he perhaps did not show with that degree of exactness the precise period of time in which his services were lost to the farming operation, or the exact value thereof. The evidence was extensive as to the nature and extent of his injuries, the assistance he required following his accident, the employment, both paid and otherwise, of the help, and the deterioration and non-improvement of his health.

The fact that he made better crops in 1963 than in 1962, and received more income from his land, does not establish that his profits would not have been more but for his injuries. There was competent evidence from which the jury could have well believed that his injuries had contributed to loss of productive income from his farming operations. Hodges v. Plasky, Tex.Civ.App., 300 S.W.2d 955, writ ref. n. r. e. Appellant's Eighth Point is overruled.

Appellant's Ninth, Tenth, and Eleventh Points read as follows:

### "NINTH POINT

"It was error for the Trial Court not to set aside its judgment and grant a new trial for the reason that the verdict of the jury was grossly excessive.

### "TENTH POINT

"It was error for the Trial Court not to set aside its judgment and grant a new trial for the reason that there is no evidence to support the verdict of the jury.

### "ELEVENTH POINT

"It was error for the Trial Court not to set aside its judgment and grant a new trial for the reason that there was insufficient evidence to support the verdict of the jury."

■ The Tenth and Eleventh Points are entirely too general and are without merit. The court submitted six special issues to the jury, and we are at a loss to determine whether such points are directed at the entire verdict or at the answer to any certain issue, and if the latter, which issue.

■ However, under Point Nine, we shall consider the proposition of whether, under all of the evidence, the answer of the jury to Special Issue No. 5, the damage issue, was grossly excessive. It is clear that a Court of Civil Appeals does not have the power to grant a new trial because of excessiveness of a verdict, except as a condition of the acceptance of a remittitur. Rule 440, T.R.C.P.; Carter v. Texarkana Bus Co., 156 Tex. 285, 295 S.W.2d 653.

The jury awarded the sum of $47,862.00 as damages for past loss of income and future diminished capacity to work and perform services, past physical pain and suffering and such pain and suffering as will in reasonable probability be sustained in the future, and past mental anguish and mental anguish as will in reasonable probability be sustained in the future.

■ The rule is well established that on an appeal involving a point of excessive award, the evidence is to be viewed most favorably to the award, and that the courts should not substitute their judgment for that of the jurors in the absence of a rather clear indication of passion, bias or prejudice. Texas Consolidated Transportation Co. v. Eubanks, Tex.Civ.App., 340 S.W.2d 830, writ ref. n. r. e.; Missouri Pacific Railroad Co v. Ramirez, Tex.Civ.App., 326 S.W.2d 50, writ ref. n. r. e.; Green v. Rudsenske, Tex.Civ.App., 320 S.W.2d 228. We have closely examined the evidence,

and conclude that the evidence is sufficient to support the verdict, and that the amount of the award is not shown to be grossly excessive as contended by appellant.

At the time of the accident, appellee lacked about three months of being 58 years old, with a life expectancy, according to standard mortality tables, of between 17 and 18 years. He farmed his own land of approximately 300 acres, principally in cotton and rice. Before the accident, according to his wife whose testimony was supported by neighbor farmers, he was a hard worker, who regularly labored in the fields with heavy farm machinery from before daylight until dark. She testified that since the accident, due to damage to his neck, he has not been able to do much work at all, gets very little rest at night, sometimes due to pain and discomfort getting out of bed and sitting in a chair all night, and has complained of constant pain. Appellee testified much to the same effect, including the fact of loss of appetite, and the necessity of taking tranquilizers for rest and easing of pain.

In the accident, his neck received a bad jolt. After trying to get along in bed for three days at his home, he was sent to the hospital for traction and treatment due to severe pain in his neck and head, where he spent nine days. In July he spent further time in the hospital under orders of Dr. Schulz, his family doctor. In the fall of 1963, the doctor gave him therapy treatment as an out patient at the hospital.

Medical testimony was given as to the extent and nature of the damage to appellee's neck muscles caused by trauma as the result of the accident, and of aggravation and acceleration of an arthritic condition in the neck due to this trauma, and medical opinions were expressed that such damage was permanent, and would probably worsen rather than improve, and that appellee's pain and suffering therefrom would be permanent; medical opinions also were that he would need traction and diathermy treatment for the remainder of his life. Appellant offered no medical witnesses, although at its request before trial appellee submitted himself to thorough medical examination by a doctor of appellant's choosing. Lay witnesses testified as to the difference in appellee's appearance and ability to do farm work before and after the accident. Appellee testified that he had been forced to rent out on shares his cotton planting allotment because he could no longer perform the work necessary, and that he was unable to do the difficult labor necessary in farming rice so that he had to have others do work which he had previously performed. He said that his neck was in such bad shape that he cannot turn his head to see where he is dragging his equipment, and has damaged some of it as a result.

The testimony showed that appellee had paid for his 303 acre farm, together with valuable improvements and farm equipments, from his earnings on the farm, mostly as the result of his own hard labor. The jury were justified in concluding from the evidence that much of his profitable earning capacity was lost as a result of the accident. He has had to hire help at much expense, and this necessity will probably continue so long as he farms his land. Much other evidence is in the record concerning loss of earning capacity which will probably cause financial loss in the future.

In view of the evidence, we hold that appellant has not shown that the jury was actuated by passion, bias or prejudice or that the verdict in assessing the amount of damages was grossly excessive, and his point of error is overruled.

Judgment affirmed.