The CITY OF HOUSTON, Appellant,

v.

Carol Ann CASH, a Minor, et al.,
Appellees.

No. 15875.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

June 8, 1972.

Rehearing Denied July 20, 1972.

surrounding area involved an unreasonable risk of serious bodily harm to children.

Issue Three. Carol Ann did not actually realize and appreciate the full nature and extent of the danger that she would fall from the pipe to the rocks and debris below.

Issue Four. The utility of eliminating the danger concerning the pipe was slight as compared to the possibility of injury resulting therefrom.

Issue Five. The City was negligent in failing to erect a preventative or safety device on the pipe.

Issue Six. Failed to find such failure was a proximate cause of the occurrence.

Issue Seven. Failed to find Carol Ann actually realized and fully appreciated the full nature and extent of the danger that she would fall from the pipe to the rocks and debris below.

Issue Nine. Failed to find Carol Ann was negligent in attempting to cross the pipe.

The City's motion to disregard the jury's answers to Issues 1, 2, 3 and 4 and render judgment in its favor was overruled. The trial court granted appellees' motion to disregard the jury's answer to Issue 6 and render judgment for appellees.

In determining whether the trial court's action as to each motion was correct we must determine whether there was any evidence of probative force to support the jury's answers to the issues attacked by the respective motions to disregard. In determining this we view only the evidence that is favorable to a particular answer and if it may be concluded from such evidentiary facts that reasonable minds could answer as did the jury, then there is evidence of probative force to support the answer and it must stand. If the reasonable mind could not make such answer, there is no evidence to support it and it, on proper motion, should be disregarded. This test is

William A. Olson, City Atty., Willard E. Dollahon, Senior Asst. City Atty.; Houston, for appellant.

Brown, Kronzer, Abraham, Watkins & Steely, Houston, W. James Kronzer, Houston, of counsel, for appellees.

BELL, Chief Justice.

This is an appeal from a judgment for $20,000 in favor of Carol Ann Cash and for $3500 in favor of her father for medical expenses.

Carol Ann was injured when she fell from a 12-inch water pipe maintained by appellant across a drainage ditch. She was injured when she fell and hit jagged rocks and concrete that were submerged in the water below her.

In response to issues submitted the jury answered in substance as follows:

Issue One. The City knew or should have known the pipe and its immediate surrounding area were frequented and played in by children.

Issue Two. The City knew or should have known the pipe and its immediate

so well established we need not cite authorities.

The accident happened the afternoon of December 3, 1967 when Carol Ann was just past her eleventh birthday. It occurred at a drainage ditch near the intersection of Chimney Rock Street and Kinglet Road in southwest Houston. The bridge crosses Kinglet. The area is residential in nature. Children cross the bridge over the ditch going to and from school. They also play in the area around where the accident happened. There is usually water in the ditch though its depth varies from time to time. There are rocks and debris in the water. The large rocks are sometimes submerged and cannot be seen. There seem to be no rocks or debris visible on the banks that would be dangerous if someone fell on them from the water pipe. On the south side of the bridge, and close to it, is the water pipe. It was aluminum in color. It was wrapped with some kind of material. It is about eight or nine feet above the water where the fall occurred. On either end near the top of the drainage ditch bank, it runs through a concrete slab. The pipe goes through the slabs near their top. The slabs slant gradually to the water's edge. A person can easily get on the pipe from the top of the bank by sliding or walking on one of the slabs. There was no safety device of any kind to prevent one from getting on the pipe. In the record are various pictures and verbal descriptions of devices that could be used at relatively small expense, from which one could well conclude such devices would be effective to keep children such as Carol Ann from getting on the pipe. There was no warning of the dangerous conditions existing beneath the water and there is evidence they were not visible.

To the north of the bridge are a gas line not belonging to the City and a sewer line belonging to the City. The height of the sewer line is not shown but from pictures it would appear to be closer to the water than the water line. On each end of it is an "alligator guard." Such guards are about five feet long. They consist of two pieces of metal that seem welded together at the top with steel saw-like teeth running longitudinally along the top. The two steel plates slant from the top and the bottom of each plate fits near the edge of the pipe on each side. These guards are placed longitudinally along the pipe. The pictures and testimony show that the guard, at one end, is placed so near a low concrete pier that a person such as Carol Ann can step from the pier to a point on the pipe in front of the guard toward the water. On the other side one such as Carol Ann who had walked the sewer pipe can, as she approaches the other guard easily jump to the bank ahead of the guard.

Carol Ann testified she had seen other children playing on the pipes on other occasions. She had never been on the pipes before. She and her friend Sheila had walked on the sewer pipe a short while before her attempt to cross the water pipe. They had gotten on it by stepping from the pier to a point on the pipe just in front of the alligator guard. Sheila walked across the water pipe ahead of Carol Ann. Carol Ann did not try to walk on the water pipe. She straddled it and was scooting across it. She stated she sought to cross in this manner because she thought it would be an easier way to cross. She denied she crossed in this fashion because she was afraid of falling if she walked. She also denied she had any fear at all of falling from the pipe. In a deposition she had testified she had a fear of falling if she walked. She further testified she did not see the large rocks beneath the pipe or know of them. They were apparently submerged and hidden.

At a point above the water Carol Ann fell and severely injured herself on the submerged and hidden rocks.

As previously stated, there was evidence to show several other types of guards that could have been economically installed that would prevent a child such as Carol Ann

from gaining access to the pipe. Some had been in use by the City beginning as early as 1940. In fact it would appear from the evidence that an alligator guard four or five feet long, if properly placed, would be effective to prevent a child from getting on the water pipe and scooting across it. The evidence showed, however, that an alligator guard could not be placed on the water pipe because of the wrapping. The City alludes to certain testimony that it urges would support the conclusion that even if a proper safety device had been installed an adventuresome child *might* (and the City in its brief uses the word "might") try to circumvent it and this would present another danger. Too, the City urges since the alligator guard was circumvented it *might* be concluded she would circumvent other safety devices.

Part of the testimony of some witnesses for the City is quoted in appellant's brief which it contends would support a conclusion that even if a safety device were erected Carol Ann might have gotten around it. A City engineer testified the length of the alligator guards (four or five feet long) was such that "you couldn't very well step over them" to get on the pipe and it would take a feat of gymnastics to crawl over them and not get scuffed up. A professor of mechanical engineering at the University of Houston testified that it is *possible* that if there were a safety device on a pipe and an adventuresome child would try to go around or through it, she would subject herself to a greater danger than if there were no safety device at all. At another point, however, he testified if the child tried to go over, under or otherwise try to get on the other side it would not necessarily be more dangerous than if there had been no safety device. He did say the presence of a safety device *might possibly* expose the child to a second danger.

■ Where the testimony in the record gives rise to no more than a surmise or suspicion as to the existence of the fact sought to be proved, there is in legal contemplation no evidence. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059; Gulf, Colorado & Santa Fe Railway Co. v. Deen, 158 Tex. 466, 312 S.W.2d 933; Dallas Railway & Terminal Co. v. Jarvis, 153 Tex. 384, 270 S.W.2d 205.

■ We are of the view that the court correctly disregarded the answer to Issue No. 6. An analysis of the material testimony, which we have fully set out, raises no more than a mere surmise or suspicion that had a proper safety device been properly erected on the pipe Carol Ann would have circumvented it and gotten on the pipe. To conclude that she would have would be purely speculative.

■ Next appellant urges that the court erred in not disregarding the answers to Issues 1, 2, 3 and 4. First, it contends Carol Ann admitted that she straddled the pipe and scooted across it because she was afraid to walk on it "because it was so high and everything." It is observed that this was deposition testimony. At trial when Carol Ann was a witness she repudiated such testimony and testified she straddled the pipe and scooted across because it was easier. She made no judicial admission. It was for the jury to pass on which version given by her was correct. United States Fidelity & Guaranty Co. v. Carr, 242 S.W.2d 224 (Tex.Civ.App.-San Antonio), writ ref.; Pacific Fire Insurance Co. v. Donald, 148 Tex. 277, 224 S.W.2d 204.

Appellant asserts the attractive nuisance doctrine does not apply because the undisputed evidence shows the water pipe "as well as the surrounding area generally" were completely visible, open and obvious with no hidden or latent danger being involved.

■ We think there can be no question that appellant knew or should have known that the pipe and its immediate surrounding area were frequented and played in by children. This being true and there

being nothing to prevent access and no warning of no right of access, there was an implied invitation to children to come on the premises. Eaton v. R. B. George Investments, 152 Tex. 523, 260 S.W.2d 587. Appellant, therefore, owed a duty to children such as Carol Ann not to subject them to unreasonable risk of serious bodily injury from dangerous conditions on the premises of which it knew or should have known. The evidence we have stated shows an unguarded 12-inch pipe crossing the drainage ditch at a height of eight or nine feet. There was evidence showing there were large jagged rocks or chunks of concrete submerged by water at times, as they were on December 3, 1967. The real risk of injury was not being on the pipe, but in falling on the hidden rocks. There was no warning of the danger. The evidence supports the jury's finding that appellant knew or should have known the pipe and its immediate surrounding area involved an unreasonable risk of serious bodily harm to children.

We further conclude there was evidence to support the finding that because of her tender age she did not actually realize and appreciate the full nature and extent of the danger that she would fall from the pipe to the rocks and debris below. All of the conditions taken together created the real danger of serious bodily injury and were not open and obvious as our previous statement of the evidence demonstrates.

Finally, appellant asserts error in the refusal of the court to submit its requested issues asking if the failure of the parents to warn Carol Ann of playing on pipes such as the one in question was negligence, and if such negligence, if any, was a proximate cause.

■ There was no error in this regard. A party wishing submission of its issue must present the issue in substantially correct form. Rule 279, Texas Rules of Civil Procedure. Even if the issue was raised the requested issue was not in substantially correct form. It constituted a comment on the evidence in that it assumed the "parents" had not warned the child. Mrs. Cash testified she had never seen the pipe before and did not know it was there or the conditions surrounding it. She did know generally there were pipes in the neighborhood. She had not warned Carol Ann about walking on pipes. She *did not believe* Mr. Cash had. This is all of the testimony on warning. Mr. Cash did not testify. The evidence does not establish as a matter of law that Mr. Cash had not warned. The issue assumes a material fact not proven, that is, that both parents had failed to warn.

We need not discuss appellees' cross points.

Affirmed.